UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                - against -                         :  **MEMORANDUM DECISION AND**
                                                            :  **ORDER**
 EDWARD CARRILLO,                                         :
                                                            :  16-CR-617 (BMC)
                          Defendant.             :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Defendant brings this motion pursuant to 28 U.S.C. § 2255 and Federal Rule of Criminal Procedure 35(a) seeking an order to "correct and or/vacat[e] the sentence and/or judgement [sic] of conviction." For the reasons discussed below, his motion is denied.[1]

## BACKGROUND

      A grand jury indicted defendant for 1) conspiring to distribute at least 280 grams of crack cocaine; 2) conspiring to and attempting to commit a Hobbs Act robbery, and 3) conspiring to distribute at least 400 grams of fentanyl (a conspiracy that resulted in an overdose death). Defendant pled guilty to a fentanyl-distribution count pursuant to a plea agreement before Magistrate Judge Orenstein. The plea was to a lesser-included offense that did not require him to allocute to the full weight of the conspiracy, or to causing the overdose death. Under the plea agreement, defendant was subject to a 5-year mandatory minimum sentence, instead of the 20-

---

[1] For reasons of judicial economy, the Court decides the motion despite defendant's direct appeal. See United States v. Outen, 286 F.3d 622, 632 (2d Cir. 2002). The Court does not believe that defendant's direct appeal is likely to succeed, and, given the relatively straightforward nature of the issues raised in defendant's motion, sees no reason to delay resolving them as promptly as possible after sentencing. Resolution of defendant's claims contributes to economizing judicial resources.

year mandatory minimum sentence triggered by the overdose death, or the 10-year mandatory minimum sentence triggered by the weight of fentanyl.

The plea agreement estimated that the United States Sentencing Guidelines ("Guidelines") range would be 108-135 months, after enhancements for possessing a dangerous weapon, U.S.S.G. § 2D1.1(b)(1), and for maintaining a distribution premises, U.S.S.G. § 2D1.1(b)(12). The enhancements applied because defendant was arrested inside of his apartment, which was a sophisticated drug stash house (with marijuana plants, a ventilation system, a pill-making machine, and a kilogram press) and because police found a loaded gun there. In the plea agreement, defendant stipulated to both the estimated range and to the applicability of the enhancements.

During the plea hearing, defendant confirmed that he read, understood, and signed the plea agreement. Magistrate Judge Orenstein informed defendant (as did the plea agreement) that the Guidelines provided only an estimate of his actual sentence, and further, that disagreement with the Guidelines calculation in the presentence investigation report ("PSR") would not serve as a basis to withdraw his plea. When eventually issued, the PSR calculated the advisory range at 108-135 months (the same as in the plea agreement).

I subsequently sentenced defendant to a 126-month sentence. At the sentencing, I first had to determine whether to accept the guilty plea that defendant had given Magistrate Judge Orenstein. Despite his stipulation, defendant, speaking on his own behalf, expressly raised concerns about the enhancements – claiming, specifically, that the gun enhancement was not applicable. When I pointed out to him that he had stipulated to the enhancements, but that he could withdraw from the plea agreement if he wanted to, defendant was adamant that he did not want to withdraw from the plea agreement. He nevertheless attempted to argue that the

enhancements were inappropriate. He was successful to the extent that I advised him that notwithstanding the stipulated Guidelines in the plea agreement, I would make my own determination whether the enhancements applied.

> THE DEFENDANT: It's just that I found out the enhancements weren't on the board with what they were trying to enhance me with.
>
> THE COURT: You are saying that you thought the enhancements that you were pleading to were appropriate at the time you pled, but you've since come to understand that maybe they are not?
>
> THE DEFENDANT: Yes. And I know that I pled to them but I brought it to Your Honor's attention just so that you would know that you would take it into consideration when you sentencing me.
>
> . . .
>
> THE COURT: But the thing is this, the plea agreement contains that enhancement. If you want the plea agreement, you have to have the enhancement. If you don't want the plea agreement, I will give you back your plea and we will go to trial, but you can't have it both ways.
>
> THE DEFENDANT: No, no, I understand that, Your Honor. I just wanted you to take it into consideration that these enhancements might not apply.
>
> THE COURT: Well, like I say, you can't really have it both ways but what I will do is this, when it comes time in this sentencing for me to consider whether the plea agreement's estimation of the guideline range was appropriate, I will consider your argument on that because I can reach my own conclusion, I'm not bound by the plea agreement but you are.
>
> . . .
>
> THE DEFENDANT: I've done research on you, I've seen other cases where you've taken stuff like this that happened in the past into some consideration, that's all I wanted to bring to your attention.
>
> . . .
>
> THE COURT: Okay, I understand what you're saying. I think what you're saying is you want the plea agreement but you want me to consider on my own whether the gun enhancement is appropriate under the guidelines. You're not asking me to consider it on my own, you're just calling it to my attention in case I want to consider it on my own; is that right?

>THE DEFENDANT: Exactly, Your Honor.
>
>. . .
>
>[Defendant's Counsel]: Your Honor, I don't know if this clarifies it, I'm trying to, that my client has advised me that he is aware that probation has now agreed with the government that both the maintaining drug distribution premises as well as the gun enhancement are applicable, that's what probation has said. He's also aware that he agreed to those as part of his plea agreement stipulated guidelines. He wanted you to be aware of the legal issues that may be created, but he was willing to stand by the plea and not contest that guideline calculation.

Sentencing Transcript, 3:6-3:15; 3:20-4:9; 6:4-6:7; 6:22-7:3; 7:11-7:20.

I specifically cautioned defendant that if I accepted his guilty plea and found that the enhancements were proper under the Guidelines, he would not be able to reargue any complaint about the enhancements at a later date:

>THE COURT: You are not going to be able to say later that, oh, I didn't want this plea agreement because I thought I shouldn't have this enhancement. If you go forward now with the plea agreement, I'll consider it on my own, but you have to agree that the plea agreement contains the appropriate guideline range –
>
>THE DEFENDANT: I understand.
>
>. . .
>
>THE COURT: And do you understand that you're not going to be able to later argue to me or to any other Court, if I decide to include the gun enhancement that I shouldn't have included in gun enhancement. Do you understand that?
>
>THE DEFENDANT: Yes.

Sentencing Transcript, 4:13-4:19; 8:1-8:6.

Defendant nevertheless insisted that he wanted to plead guilty pursuant to the plea agreement.

>THE DEFENDANT: Your Honor, like I said, I want[] to stand by the plea agreement . . . .
>
>. . .

4

> THE DEFENDANT: But like I said in the letter, like I stand by – I stand by the plea agreement and I accept the plea agreement as it is.

Sentencing Transcript, 6:2-6:3; 6:13-6:15.

Defendant now seeks habeas relief, claiming ineffective assistance of counsel,[2] because "neither the Court nor counsel advised Defendant that he could have withdrawn from the plea agreement and maintained his guilty plea upon a showing of 'fair and just reasons,'" and that had he been so advised, "he would have withdrawn from the plea agreement but maintained his plea of guilty, thus, requiring the Court to decline to apply the two aforementioned enhancements given their inapplicability to the offense of the conviction." He also claims that the Government made "material misrepresentations to the Court," arguing that it searched his residence and took photographs before obtaining a warrant, but that his counsel failed to mount a defense based on the alleged illegality of the search. Defendant also seeks the same relief under Federal Rule of Criminal Procedure 35(a), alleging that his sentence was improperly increased with sentencing enhancements.

## DISCUSSION

Section 2255 of Title 28, United States Code, allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See Hill v. United States, 368 U.S. 424, 426–27, 82 S.Ct. 468, 470 (1962). "The Court's discretion to grant relief under section

---
[2] As the Government acknowledges, the plea waiver in the plea agreement expressly excludes challenges "raising a claim of ineffective assistance of counsel."

5

2255 is to be exercised sparingly, for such applications 'are in tension with society's strong interest in the finality of criminal convictions.'" Francis v. United States, No. 02 CV 0468, 2010 WL 1260158, at *3 (E.D.N.Y. March 31, 2010) (quoting Elize v. United States, No. 02 CV 1350, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008).

To demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984), a defendant must show two things: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. A court will deem performance deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. If there is a reasonable probability that the outcome might have been different because of a legal error, the defendant has established prejudice and is entitled to relief. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-11 (2017); Lafler v. Cooper, 566 U.S. 156, 166 (2012); Glover v. United States, 531 U.S. 198, 203-04 (2001). An ineffective assistance of counsel claim will fail if the defendant fails to make a sufficient showing under either of the Strickland prongs. See Strickland, 466 U.S. at 697.

Defendant alleges that his counsel was ineffective in two ways. First, defendant claims that his counsel failed to explain to him that he could have withdrawn from the plea agreement but pled guilty to the indictment. Defendant asserts that he wanted to plead guilty, but would not have accepted the plea agreement if it had been properly explained that "the enhancements would result in a misapplication of the Guidelines." Defendant alleges that had he withdrawn from the plea agreement, he would have received a "significantly shorter" term of imprisonment. Second, defendant claims that his counsel did not "investigate the circumstances surrounding the search [of the apartment] and move to dismiss the indictment."

6

As to defendant's first claim, he is mistaken in his belief that withdrawing from the plea agreement would have resulted in a "significantly shorter" term of imprisonment. It would have resulted in a much longer one. If he withdrew from the plea agreement, but plead guilty to the indictment, the Court would have been compelled to sentence him *to least* 20 years of prison – nearly double the sentence he received – or as long as life. Notably, neither in his motion nor anywhere else has defendant suggested that he wanted to go to trial. This is hardly surprising, given that he was arrested in a drug stash house following intercepted calls in which he discussed the sale of drugs and the overdose death.

In any event, even though defendant may have come close to breaching the plea agreement, I did what defendant asked me to do and considered not just the parties' stipulation in the plea agreement, but I undertook my own analysis of whether the enhancements were appropriate under the Guidelines. They were.

First, the premises enhancement applies if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Furthermore, "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." see Id. cmt. N. 17. Here, defendant lived in an apartment with a room dedicated to growing marijuana (complete with a ventilation system). Additionally, authorities found a pill-making machine and a kilogram press in the apartment. With these facts, there is simply no credible way to claim that manufacturing or distributing drugs was an "incidental" use of defendant's apartment. Defendant maintained a small-scale drug factory.

7

Second, the firearms enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Application notes provide for the enhancement "if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." Id., Application Note 11(A) (emphasis added). This is not a case where an unloaded hunting rifle was found stored away in a closet. Police recovered a loaded pistol from defendant's grow-house apartment. Especially in light of intercepted calls with his alleged co-conspirators in which they discussed the use of firearms in drug-related activity, there is every reason to believe that the recovered weapon was connected to the offense for which defendant plead, and no viable argument to find that connection "clearly improbable."

Defendant's main point, in arguing against the enhancement (despite his plea agreement), was that authorities found the gun about six months after the end date of the conspiracy in the indictment. I considered that, but I did not find it "clearly improbable" that the gun was connected to the conspiracy. "The fact that the gun was found six months after the end of the charged date does not suggest to me under the terms of these guidelines that it was not involved in this particular crime."

Finally – and critically – the Guidelines would have called for both enhancements *whether or not defendant plead under the plea agreement*. Agreement or not, defendant was not escaping from the increase in his sentence.

In short, there was nothing deficient about defense counsel's performance: defendant cannot plausibly claim that his counsel secured anything for him but, as the Government put it, "a remarkable plea." Accordingly, this claim fails the first Strickland prong.

As the transcript excerpted above makes evident, defendant understood that the enhancements were part and parcel of the plea agreement; he acknowledged that he would not be

8

permitted to re-litigate any concerns about their application at a later date; and yet informed of these facts, he freely plead guilty.

Defendant's second claim of ineffective assistance of counsel turns on his assertion that the Government removed from his apartment the pill-making machine and "some of the contraband" before obtaining a warrant, and never "froze" the apartment. Defendant alleges that in light of this allegedly illegal search, his counsel should have moved to dismiss the indictment. This argument fails for two reasons.

First, the search was legal. "Under the Fourth Amendment's protective sweep exception, agents executing an arrest inside a home may, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." United States v. Guerrero, 813 F.3d 462, 467 (2d Cir. 2016) (internal quotations omitted). Defendant offers no facts to show that anything different happened here, and the facts that I found at sentencing, pursuant to my adoption of the PSR, are only consistent with a legal search.

Second, even if the search had been illegal, I still would have considered its results at sentencing. Here, once again, it is important to note that defendant does not claim that he would have gone to trial; he merely asserts that he would have pled to the indictment instead of the plea agreement. But whether defendant had pleaded guilty to an indictment or under an agreement, I would have considered the results of the search, legal or not, because the exclusionary rule does not apply at sentencing, and a sentencing judge is entitled to consider evidence that would not be admissible at trial. "Absent a showing that officers obtained evidence expressly to enhance a sentence, a district judge may not refuse to consider relevant evidence at sentencing, even if that evidence has been seized in violation of the Fourth Amendment." United States v. Tejada, 956

F.2d 1256, 1263 (2d Cir. 1992). Any claim of deficient performance on the part of his counsel as to this point therefore fails under both of Strickland's requirements.

Finally, defendant's argument under Federal Rule of Criminal Procedure 35(a) is unavailing. Rule 35(a) only allows a court to "correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35. See United States v. Abreu-Cabrera, 64 F.3d 67, 72 (2d Cir. 1995) (Rule 35(a) "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action."). Indeed,

> [t]he subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or *for the court simply to change its mind about the appropriateness of the sentence.* Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

United States v. Abreu-Cabrera, 64 F.3d 67, 72 (2d Cir. 1995).

## CONCLUSION

The motion is denied. Because defendant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c).

**SO ORDERED.**

                                                    U.S.D.J.

Dated: Brooklyn, New York
       February 9, 2018